IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2006

## JIMMY RAY CULBERSON V. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of Maury County
No 13,074   Stella Hargrove, Judge**

_____

_____ **M2005-01860-CCA-R3-PC - Filed October 12, 2006**

_____

Petitioner, Jimmy Ray Culberson, pled guilty to two counts of rape of a child and received concurrent fifteen-year sentences with 100% service on each count.  In September 2003, petitioner filed a petition for post-conviction relief claiming that his plea was not knowing and voluntary and that he received the ineffective assistance of counsel. Following an evidentiary hearing, the trial court denied the petition.  In this appeal, petitioner maintains the trial court erred in denying his petition. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court is Affirmed**

J. S. DANIEL, SR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General, Mike Bottoms, District Attorney General; for Appellee, State of Tennessee.

William C. Barnes, Jr., Columbia, Tennessee, Attorney for the Petitioner, Jimmy Ray Culberson.

# OPINION

### BACKGROUND[1]

The Petitioner, Jimmy Ray Culberson, was arrested on February 15, 2002 following allegations that he had sexual contact with a minor. When he arrived at the police station, the petitioner was placed in a room with Detective Carl Westmoreland.  According to Westmoreland,

---

[1] The appellate record contains a transcript of a preliminary hearing (which evolved into a hearing on a motion to suppress) and a transcript from the post-conviction evidentiary hearing.

he turned on the tape recorder and advised petitioner of his *Miranda* rights. Even though petitioner was described as a "low-spoken" man, petitioner said he understood his rights. Soon thereafter, Detective Westmoreland presented the written rights waiver form which was signed by petitioner. The back of the form contained the text of the *Miranda* warnings.

Westmoreland said petitioner told him he could not write, had a limited education and could not read. Therefore, Westmoreland wrote on the form that petitioner could not write and tape-recorded petitioner's statement. Petitioner was not handcuffed and did not appear to be under the influence of any type of medication or intoxicant. According to Westmoreland, the petitioner appeared to understand what was being told to him or was being asked of him.

At the post-conviction hearing, petitioner testified that he did not recall the day he entered a guilty plea on his charges. He similarly had no recollection of his conversations with Westmoreland, the rights waiver form or his statement. He said he did not understand the charges made against him. However, petitioner did recognize Westmoreland.

Petitioner said he recalled meeting with his trial counsel but could not remember how many times he met with her prior to trial. Although shown his guilty plea form, petitioner did not recognize his initials and could not recollect going over the document. Petitioner said his inability to understand was attributable in part to the medication he was taking at the time. He explained the medication was to "stretch his nerves" and that he was suicidal during the period.

Petitioner stated he did not realize the nature of his charges until he had spoken with his counsel. He said he learned of his sentence when he arrived at the penitentiary. However, he did recall informing him he faced a range of 15 to 25 years if found guilty. He said he did not realize until later that he could not appeal.

When asked about his confession, petitioner said he did not admit to the crime. He said the officer used trickery to obtain his statement by first stating anything he said could be used against him but then later telling him he would not be charged. Petitioner said trial counsel was ineffective for failing to talk to the witnesses.

On cross-examination, petitioner recalled coming to court on the date of his plea and standing with counsel before the court. However, he said he did not recall entering his guilty plea. He added that he was also on blood pressure and cholesterol medication at the time of the plea. Petitioner said he wanted counsel and the Court to explain things to him but that they would not do so. He said every time he tried to talk to counsel she did not want to listen. He added that she did not properly investigate the case and would not talk to him about the case. Petitioner said he recalled going to Murfreesboro for an evaluation of his competency to stand trial. The results of the examination indicating petitioner was competent to stand trial were admitted at the hearing.

Petitioner said he admitted to trial counsel that he had touched the child but denied that rape occurred. He further did not realize he would receive 15 years and learned in prison that touching a child would have carried significantly less punishment. When asked about the relief he desired,

2

petitioner said he hoped to receive probation but did not want a new trial.

Trial counsel testified that she was employed by the District Public Defender and represented petitioner at the trial level. She said that on at least four occasions she visited with petitioner at his home to know his living environment and to determine the validity of the allegations made against petitioner.

Counsel said petitioner had difficulty understanding her at times. Therefore, she attempted to explain the charges in terms he could understand. She testified that petitioner, as with other defendants, had difficulty understanding he could be charged with rape even if there was no penile-vaginal intercourse. In the end, she believed he understood the charges and what he was doing when he pled guilty.

On cross-examination, counsel recalled filing a motion to suppress petitioner's statement which was denied by the trial court. She said she interviewed the victim and found her to be mature and secure in her testimony. In counsel's opinion, the victim would have made a good state witness. Even though petitioner had difficulty understanding the concept that touching could be penetration, counsel said the evidence, if believed, supported non-penile penetration.

## DISCUSSION

In this appeal, petitioner claims his guilty pleas were not entered knowingly and voluntarily. He bases this claim on his lack of education, his inability to understand the proceedings, the effects of his medication taken at the time of the proceedings, and ineffective assistance of counsel. For the reasons set out below, we find no merit in these arguments.

### *Burden of Proof*

Tennessee Code Annotated section 40-30-103 (2003) provides that in order for a petitioner to obtain post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgement of a constitutional right. The petitioner bears the burden of proving the factual allegations in the Petition for Post-Conviction Relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusion drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal it is the burden of the petitioner to show that the evidence preponderates against the lower court's findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the "range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

3

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W. 2d 363, 370 (Tenn. 1996).

To establish the prejudice prong of the Strickland analysis, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687-88, 692, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics.

Here, the post-conviction claim is primarily embedded in petitioner's primary claim that his guilty plea was not knowing and voluntary. Therefore, it is appropriate to analyze this post-conviction claim under the following standard.

### *Standard of Review*

Appellate review of a trial court's determination of whether a petitioner has entered a plea knowingly and voluntarily is under a *de novo* standard of review consistent with the standards set forth in Tennessee Rule of Appellate Procedure 13(d). As such, the trial court's findings of fact on the underlying claim are reviewed upon a *de novo* standard accompanied with the presumption that those findings are correct unless a preponderance of the evidence is otherwise. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). However, a trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness given to the trial court's conclusions. Id. at 457.

A defendant who enters a plea of guilty simultaneously waives several constitutional rights, including his privileges against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers. For this waiver to be valid under due process, it must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an

4

admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of law in relation to the facts. <u>Boykin v. Alabama</u>, 395 U. S. 238, 244 (1968).

In order to find that a plea was entered "intentionally" or "knowingly," <u>Boykin</u> requires that the trial court "canvas the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." <u>Id</u>. at 244. Our Supreme Court has adopted the principles enunciated in the <u>Boykin</u> analysis in determining voluntary and intentional pleas of guilty. <u>Blankenship v. State,</u> 858 S.W.2d 897, 903 (Tenn. 1993).

Petitioner claims his guilty plea was not knowing and voluntary for several reasons. His first claim is that due to his lack of education and inability to read or write, he did not understand the nature of the proceedings, including his guilty plea. It cannot be disputed that the petitioner had minimal education and could not read or write. During the initial questioning, Detective Westmoreland noted on his form that petitioner could not read or write. Accordingly, he tape-recorded the statement he took from petitioner. As is further evident from the record, the petitioner's lack of education was coupled with his difficulty in hearing. The parties took measures to be sure petitioner could hear the proceedings.

From a review of the record as a whole, this court concludes these educational and physical deficiencies were not so severe that they prevented petitioner from understanding the proceedings from his initial interview through the entry of the guilty plea. Therefore, we find no reason to grant relief on this basis.

Petitioner next claims he was on medication at the time of the plea, and therefore, lacked the capacity to understand the proceedings. Petitioner testified that he was on medication for his nerves along with medication for high blood pressure and cholesterol. He added that the "nerve medication" was due in part to his suicidal thoughts during the time period. No medical testimony was presented at the post-conviction hearing to determine what medication petitioner was taking and what effect, if any, it might have had on his decision to plead guilty. Without some additional evidence, the Court cannot conclude the medication rendered the plea involuntary or unknowing.

Finally, petitioner claims his plea was not knowing and voluntary due to the ineffective assistance of counsel. During the post-conviction evidentiary hearing, petitioner claimed counsel failed to meet with him, failed to question witnesses and failed to properly explain the proceedings to him. However, the testimony from the hearing refutes these claims. Trial counsel testified that she met with petitioner on at least four occasions, including visits to petitioner's home. Even though petitioner claimed counsel failed to interview witnesses, the testimony revealed that counsel spoke with neighbors and attempted to go door-to-door to question individuals. Counsel further interviewed the victim and found her to be mature and credible. Trial counsel said the victim would have made a good witness for the state.

Counsel also noted some difficulty in communicating with petitioner. In addition to hearing-related issues, she said the petitioner could not understand that penetration (for the purposes

of a rape charge) could be accomplished other than by penile-vaginal intercourse. Petitioner admitted he touched the victim but denied penile contact. The testimony also indicated counsel was concerned enough about petitioner's mental status that she asked that he be evaluated to determine his competency to stand trial. However, she noted the results indicated petitioner was competent to stand trial and was able to assist counsel in his defense. Counsel said she filed a motion to suppress petitioner's statement but that the motion was denied following a lengthy hearing. She added that throughout her representation, she believed petitioner understood the proceedings, including his plea of guilty.

This Court cannot conclude that the performance of counsel fell below the acceptable standards enumerated in Strickland and Baxter. In so finding, further inquiry into the prejudice prong is unnecessary.

The trial court entered a written order denying petitioner's claims for relief. In its order the Court found petitioner had failed to prove the allegations by clear and convincing evidence. Viewing the record as a whole, we agree with the trial court's findings. Accordingly, the judgment of the trial court is hereby affirmed.

_____
J. S. Daniel, Senior Judge

6